JEFFER MANGELS BUTLER & MITCHELL LLP
ROD S. BERMAN (Bar No. 105444)
JESSICA BROMALL SPARKMAN (Bar No. 235017)
1900 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067
Telephone:   (310) 203-8080
Facsimile:   (310) 203-0567

JEFFER MANGELS BUTLER & MITCHELL LLP
GREGORY S. CORDREY (Bar No. 190144)
3 Park Plaza, Suite 1100
Irvine, California 92614-2592
Telephone:   (949) 623-7200
Facsimile:   (949) 623-7202

Attorneys for THERABODY, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| THERABODY, INC., a Delaware corporation, <br><br> Plaintiff, <br><br> v. <br><br> DJO, LLC, a Delaware LLC, dba COMPEX, and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No. 2:21-cv-9327 <br><br> **COMPLAINT FOR:** <br><br> **1.) FEDERAL FALSE DESIGNATION OF ORIGIN, 15 U.S.C. § 1125(a);** <br><br> **2.) FEDERAL UNFAIR COMPETITION, 15 U.S.C. § 1125(a)** <br><br> **3.) COMMON LAW TRADE DRESS INFRINGEMENT;** <br><br> **4.) INFRINGEMENT OF U.S. PATENT NOS. 10,918,565; 10,857,064; D849,261; D861,182; D850,640; D859,680; AND D845,500** <br><br> **5.) UNFAIR BUSINESS PRACTICES, CAL. BUS. & PROF. CODE § 17200 *ET SEQ.*** <br><br> **DEMAND FOR JURY TRIAL** |

## COMPLAINT

Plaintiff, Therabody, Inc. ("Therabody"), files this complaint against defendant DJO, LLC, a Delaware LLC, dba Compex ("DJO") and Does 1-10, inclusive (collectively "Defendants").

## THE PARTIES

1.      Therabody is, and at all times relevant hereto was, a corporation duly organized and existing under the laws of the state of Delaware, with its principal place of business at 6100 Wilshire Blvd., Ste. 200, Los Angeles, CA 90048.

2.      Therabody is informed and believes and, based thereon, alleges that defendant DJO is a domestic California limited liability company, with offices at 5919 Sea Otter Place, Suite 200, Carlsbad, CA 292010 and 3151 Scott St., Vista, CA 92081.

3.      Therabody is ignorant of the true names and capacities of Defendants sued herein as Does 1 through 10, inclusive, and therefore sues these Defendants by such fictitious names and capacities. Therabody will amend this Complaint to allege their true names and capacities when ascertained, along with the appropriate factual allegations.

4.      Therabody is informed and believes and, based thereon, alleges that Defendants are manufacturing, using, selling, or offering for sale within the United States, or importing into the United States the infringing massage gun products described below.

5.      Therabody is informed and believes and, based thereon, alleges that each of the Defendants conspired and acted in concert with one or more other Defendants to commit the wrongs against Therabody alleged herein, and in doing so were at all relevant times the agents, servants, employees, principals, joint venturers, alter egos, and/or partners of each other. Therabody is further informed and believes and on that basis alleges that, in doing the things alleged in this Complaint, each of the Defendants was acting within the scope of authority conferred upon that Defendant by the consent, approval, and/or ratification of one or more of the other Defendants.

1

## JURISDICTION AND VENUE

2      6.      This is an action for (a) trade dress infringement under Section 43 of the

3  Lanham Act, 15 U.S.C. §1125; (b) trade dress infringement under the laws of the state

4  of California; (c) patent infringement under the patent laws of the United States, 35

5  U.S.C. § 271; and (d) unfair competition pursuant to California Business and

6  Professions Code Section 17200, *et seq.*

7      7.      This Court has subject matter jurisdiction over the trade dress and patent

8  claims in this action pursuant to 28 U.S.C. §1338(a) and 15 U.S.C. §1121. This Court

9  has supplemental jurisdiction over the remaining state law claims under 28 U.S.C.

10 §1367 because the claims are so related to Therabody's claims under federal law that

11 they derive from a common nucleus of operative fact and form part of the same case

12 or controversy.

13     8.      This Court has personal jurisdiction over Defendants because each of

14 them has committed and continues to commit acts of infringement in violation of 15

15 U.S.C. § 1125 and 35 U.S.C. § 271, and places infringing products into the stream of

16 commerce, with knowledge or understanding that such products are sold in the State

17 of California, including in this judicial district.  The acts of Defendants cause injury

18 to Therabody within this judicial district.

19     9.      Upon information and belief, Defendants derive substantial revenue

20 from the sale of infringing products within the State of California, including this

21 judicial district, expect their actions to have consequences within this district, and

22 derive substantial revenue from interstate and international commerce.

23     10.     Upon information and belief, Defendants sell substantial amounts of

24 infringing products to consumers who reside within the State of California through its

25 internet-based ecommerce website and internet websites operated by others, such as

26 Amazon.com and https://www.compex.com/.

27     11.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and

28 (c) because a substantial part of the events or omissions giving rise to the claims

JMBM | Jeffer Mangels Butler & Mitchell LLP

occurred in this judicial district where Defendants have committed and continue to commit infringing acts, including, without limitation, using their infringing trade dress to market and sell the infringing products to consumers located within this judicial district.   Further, on information and belief, an appreciable portion of Defendants' customers reside in Los Angeles.   In addition, venue is proper because Therabody's principal place of business is in this judicial district and Therabody suffered harm in this judicial district.

## GENERAL ALLEGATIONS

12.    Therabody is in the business of developing, manufacturing and selling high-quality, innovative percussive therapy devices.   Therabody invests considerable time, effort and money in developing and protecting its intellectual property, including the trade dress of its products.

13.    Since at least as early as May 31, 2015, Therabody has used a distinctive blue color in presenting its trademarks, in its marketing and advertising, and on its massage gun products.

14.    As a result of the use of its distinctive blue color, Therabody has developed trade dress rights in the blue color, the use of which is pervasive on Therabody's website, advertising, and as applied to its massage gun products and packaging as specifically described below (the "Trade Dress").

15.    Therabody's distinctive blue color used to depict textual elements on black product packaging, as shown, for example, in the images below:

  

16.   Therabody has applied its distinctive blue color to substantially all of the handle portion of its massage gun product, as shown in the image below.



17.   Therabody has also applied its distinctive blue color to the entirety of the inner side of the handle portion of its massage gun product, as shown below:



18.   Therabody has applied its distinctive color blue as an accent color on its massage gun products, as shown in the images below, namely, in a band encircling the arm to which the massage head attachments are attached and to the circle above said arm.

   

19.   The Trade Dress, namely, the application of a distinctive color of blue to various parts of its products or packaging, is not functional: it does not provide a

1   utilitarian advantage, a plethora of alternatives colors are available for use, and its use

2   is not the result of a simple or inexpensive method of manufacture. Therabody

3   selected and uses the color blue for the purpose of identifying its products and

4   distinguishing them from the products of third parties.

5       20.   The Trade Dress is either inherently distinctive, or, through Therabody's

6   continuous use and promotion, has acquired distinctiveness, and the Trade Dress is

7   uniquely associated with Therabody and its massage gun products.  Therabody has

8   used its unique color blue continuously since it launched its first massage gun product.

9   The blue accents, described above, are consistently applied to Therabody products,

10  and Therabody's use of the color blue is consistent and pervasive.

11      21.   Therabody has sold millions of dollars of products bearing its distinctive

12  color blue. It has spent millions of dollars to promote its products bearing its

13  distinctive color blue. Therabody products bearing the Trade Dress and/or

14  Therabody's distinctive blue color are used by numerous celebrities and professional

15  athletes, have been the subject of extensive press and advertising, and have been used

16  on the field during a Super Bowl and on the court during the NBA Finals. As a result

17  of Therabody's extensive advertising and promotion and the widespread, and high

18  profile, use of Therabody's Trade Dress, including as described above, Therabody's

19  Trade Dress is associated by the public exclusively with Therabody and its products

20  and is used by the public as an indicator of the origin and quality of Therabody's

21  massage gun products.

22      22.   Additionally, Defendants' have copied Therabody's Trade Dress, as

23  have third parties.  Such copying is further evidence that Therabody's Trade Dress

24  has secondary meaning.

25      23.   As is apparent from the images of Defendants' products set forth in

26  Paragraph 46, below, Defendants are using a virtually identical blue color on their

27  massage gun products. In fact, apparently recognizing the strength and value of

28  Therabody's Trade Dress, Defendants have applied the blue color to their products in

virtually the same locations and positions as that blue color is applied to the Therabody products.

24.    Both parties' goods are massage guns; thus the goods are legally identical and directly competitive.  It follows that the consumers and the channels of trade and marketing are the same for both parties.  Additionally, both parties are selling their products through online retail platforms.

25.    The Therabody Trade Dress is a strong mark, for the same reasons discussed in Paragraphs 12-21, above.

26.    It is evident that, perhaps recognizing the strength and value of the Therabody Trade Dress, Defendants have intentionally and deliberately attempted to replicate it on their competing products.

27.    In view of the foregoing, Defendants' application of the same blue color to the same products in virtually the same location and the same positions as that blue color is applied to the Therabody products is likely to cause confusion or mistake, or to deceive members of the public into believing that Defendants' massage gun products are approved, sponsored, endorsed, or licensed by, or affiliated, connected or otherwise associated with Therabody, which is not the case.  Such confusion, mistake, or deception will inevitably continue after the sale of the products, as consumers continue to encounter Defendants' infringing products at gyms, in therapists or doctors' offices, or in other post-sale contexts, and as a result of such post-sale confusion the harm to Therabody's reputation will continue and be amplified.

Therabody's Patents

28.    On February 16, 2021, the United States Patent and Trademark Office issued United States Patent Number 10,918,565, entitled "Percussive massage device and method of use" (hereinafter the "'565 Patent"), issued on February 16, 2021, a true and correct copy of which is attached hereto as Exhibit 1.

Jeffer Mangels
Butler & Mitchell LLP
JMBM

29.     Therabody is the owner of the '565 Patent. The '064 Patent is presumed to be valid and is *prima facie* proof that the inventions claimed in the '064 Patent are novel and non-obvious.

30.     The '565 Patent pertains to a percussive massage device and method of using a percussive massage device.

31.     On December 8, 2020, the United States Patent and Trademark Office issued United States Patent Number 10,857,064, entitled "Percussive Therapy Device" (hereinafter the " '064 Patent"). A true and correct copy of the '064 Patent is attached hereto as Exhibit 2.

32.     Therabody is the owner of the '064 Patent. The '064 Patent is presumed to be valid and is *prima facie* proof that the inventions claimed in the '064 Patent are novel and non-obvious.

33.     The '064 Patent pertains to a percussive massage device and method of using a percussive massage device.

34.     On May 21, 2019, the United States Patent and Trademark Office issued United States Patent Number D849,261, entitled "Massage Element" (hereinafter "the '261 Patent").  A true and correct copy of the '261 Patent is attached hereto as Exhibit 3.

35.     Therabody is the owner of the '261 Patent.  The '261 Patent pertains to a particular ornamental design for an attachment for percussive massage devices, including as depicted in Fig. 1 below.  The '261 Patent is presumed to be valid and is *prima facie* proof that the design shown in the '261 Patent is novel and non-obvious.



**Fig. 1**

36.    On September 2, 2019, the United States Patent and Trademark Office issued United States Patent Number D861,182, entitled "Massage Element" (hereinafter "the '182 Patent").  A true and correct copy of the '182 Patent is attached hereto as Exhibit 4.

37.    Therabody is the owner of the '182 Patent.  The '182 Patent pertains to a particular ornamental design for an attachment for percussive massage devices, including as depicted in Fig. 2 below. The '182 Patent is presumed to be valid and is *prima facie* proof that the design shown in the '182 Patent is novel and non-obvious.



**Fig. 2**

38.    On June 4, 2019, the United States Patent and Trademark Office issued United States Patent Number D850,640, entitled "Massage Element" (hereinafter "the '640 Patent").  A true and correct copy of the '640 Patent is attached hereto as Exhibit 5.

39.    Therabody is the owner of the '640 Patent.  The '640 Patent pertains to a particular ornamental design for an attachment for percussive massage devices, including as depicted in Fig. 3 below.  The '640 Patent is presumed to be valid and is *prima facie* proof that the design shown in the '640 Patent is novel and non-obvious.



**Fig. 3**

40.     On September 10, 2019, the United States Patent and Trademark Office issued United States Patent Number D859,680, entitled "Massage Element" (hereinafter "the '680 Patent").  A true and correct copy of the '680 Patent is attached hereto as Exhibit 6.

41.     Therabody is the owner of the '680 Patent.  The '680 Patent pertains to a particular ornamental design for an attachment for percussive massage devices, including as depicted in Fig. 4 below.  The '680 Patent is presumed to be valid and is *prima facie* proof that the design shown in the '680 Patent is novel and non-obvious.



**Fig. 4**

42.     On April 9, 2019, the United States Patent and Trademark Office issued United States Patent Number D845,500, entitled "Massage Element" (hereinafter "the '500 Patent").  A true and correct copy of the '500 Patent is attached hereto as Exhibit 7.

43.     Therabody is the owner of the '500 Patent.  The '500 Patent pertains to a particular ornamental design for an attachment for percussive massage devices, including as depicted in Fig. 5 below. The '500 Patent is presumed to be valid and is *prima facie* proof that the design shown in the '500 Patent is novel and non-obvious.



**Fig. 5**

44.     Therabody's patented and patent-pending devices are innovative and have received industry praise and recognition, including the 2019 A' Design Award in Digital and Electronic Devices Design for its Therabody G3PRO design.

<u>Defendant's Infringing Conduct</u>

45.     Therabody is informed and believes and based thereon alleges that Defendant recently began competing with Therabody in the percussive massage device industry by manufacturing and selling percussive massage devices infringing Therabody's trade dress and patents.  Specifically, Defendant manufactures and sells: 1) Compex Fixx 2.0 percussive massage device (the "Infringing Device") and 2) attachments with identical, or nearly identical, designs to those of Therabody's patents, including head attachments infringing the designs claimed in the '261 Patent and the '182 Patent ("First Infringing Attachment"), the '640 Patent and the '680 Patent ("Second and Third Infringing Attachments"), and the '500 Patent (the "Fourth Infringing Attachment"), (collectively, the Infringing Device and Infringing Attachments are "Infringing Products" and the asserted patents are "Asserted Patents").

46.     The Infringing Device is shown below:



47.    The First, Second, Third and Fourth Infringing Attachments are shown below:



First Infringing    Second Infringing    Third Infringing    Fourth Infringing
Attachment          Attachment           Attachment          Attachment

48.    As shown above, it is clear from their product design and product name selection that Defendants are deliberately imitating Plaintiff. Defendants product design employing the same distinctive color of blue to the head portion of its percussive massage device is virtually identical to Therabody's Trade Dress.

49.    Defendants' conduct is likely to cause confusion or mistake, or to deceive members of the public into believing that Defendants or their percussive massage device are approved, sponsored, endorsed, or licensed by, or affiliated, associated, or otherwise connected with Therabody, which is not the case. Such confusion, mistake, or deception will inevitably continue after the sale of the products, as consumers continue to encounter Defendants' infringing products at gyms, in therapists or doctors' offices, or in other post-sale contexts, and as a result of such post-sale confusion the harm to Therabody's reputation will continue and be amplified.

## FIRST CAUSE OF ACTION

### False Designation of Origin, 15 U.S.C. § 1125(a)

(Against All Defendants)

50.    Therabody realleges and incorporates by reference all foregoing paragraphs as if fully set forth herein.  Therabody uses its Trade Dress in commerce on and in connection with its percussive massage devices, accessories therefor, and the advertising and promotion of the same.  Therabody's Trade Dress, described

above, is comprised of distinctive features which are protected under Lanham Act § 43(a). Therabody's Trade Dress is either inherently distinctive or, as a result of its use, has acquired secondary meaning whereby the relevant consuming public and the trade associate these features with a single source.

51.    As described above, Defendant has used in commerce trade dress that is confusingly similar to Therabody's unique and protectable Trade Dress (hereinafter the "Infringing Trade Dress"), on and in connection with their sale of massage gun products and accessories therefor.

52.    Defendants' conduct alleged herein constitutes a false designation of origin and/or a false or misleading description and/or representation of fact, which is likely to deceive or to cause confusion or reverse confusion or mistake among consumers as to the origin, sponsorship, or approval of the Defendants' goods and services and/or deceive or to cause confusion or mistake among consumers as to the affiliation, connection, or association between Defendant and Therabody.

53.    Defendants' conduct described herein was knowing, willful, intentional, deliberate, and in total disregard of Therabody's rights. The knowing and intentional nature of the acts set forth herein renders this an exceptional case under 15 U.S.C. § 1117(a).

54.    As a direct and proximate cause of Defendants' unlawful, intentional, and willful conduct, Therabody has been and will continue to be irreparably harmed unless Defendant is permanently enjoined from such unlawful conduct. Therabody has no adequate remedy at law. Unless enjoined, Defendant will continue to mislead and confuse consumers as to the origin, sponsorship, or approval of Defendants' goods and services and/or deceive or cause confusion or mistake among consumers as to the affiliation, connection, or association between Defendant and Therabody.

55.    In light of the foregoing, Therabody is entitled to a permanent injunction prohibiting Defendant from using the Infringing Trade Dress, and any marks or trade dress confusingly similar to the Trade Dress, and to recover from Defendant all

1  damages that Therabody has sustained and will sustain, and all gains, profits, and

2  advantages obtained by Defendant as a result of their infringing acts alleged above in

3  an amount   not   yet known, and the costs of this action pursuant to 15 U.S.C.

4  § 1117(a).

5      56.    Pursuant to 15 U.S.C. § 1118, Plaintiff is entitled to, and hereby seeks,

6  an order for the destruction of all materials bearing the Infringing Trade Dress, or any

7  other trade dress confusingly similar to Therabody's Trade Dress.

8                    **SECOND CAUSE OF ACTION**

9              **Federal Unfair Competition, 15 U.S.C. § 1125(a)**

10                      (Against All Defendants)

11     57.    Therabody realleges and incorporates by reference all foregoing

12  paragraphs as if fully set forth herein.

13     58.    Defendants have deliberately and willfully attempted to capitalize on

14  Therabody's goodwill and reputation established in connection with the Therabody

15  Trade Dress by misleading, confusing, or deceiving consumers as to source, source,

16  origin, affiliation, approval, sponsorship, and/or association, including by copying

17  and using each element of the Trade Dress.

18     59.    Defendants have engaged in, and continue to engage in, their unlawful,

19  intentional, and willful conduct without Therabody's permission or consent.

20     60.    As a direct and proximate cause of Defendants' unlawful, intentional, and

21  willful conduct, Therabody has been and will continue to be irreparably harmed unless

22  Defendants are permanently enjoined from such unlawful conduct. Therabody has no

23  adequate remedy at law. Unless enjoined, Defendant will continue its unlawful,

24  intentional, and willful conduct.

25     61.    In light of the foregoing, Therabody is entitled to a permanent injunction

26  prohibiting Defendant from using the Infringing Trade Dress, and any marks or trade

27  dress confusingly similar to the Trade Dress, and to recover from Defendant all

28  damages that Therabody has sustained and will sustain, and all gains, profits, and

advantages obtained by Defendants as a result of its infringing acts alleged above in an amount not yet known, and the costs of this action pursuant to 15 U.S.C. § 1117(a).

62.     Pursuant to 15 U.S.C. § 1118, Therabody is entitled to, and hereby seeks, an order for the destruction of all materials bearing the Infringing Trade Dress, or any other trade dress confusingly similar to the Trade Dress.

63.     As this is an exceptional case, given Defendants' willful acts, pursuant to 15 U.S.C. § 1117(a), Therabody is further entitled to three times the amount of the above profits or damages, whichever is greater, and their attorneys' fees.

### THIRD CAUSE OF ACTION

**Common Law Trade Dress Infringement**

(Against All Defendants)

64.     Therabody realleges and incorporates by reference all foregoing paragraphs as if fully set forth herein.

65.     Defendants' acts constitute common law trade dress and trademark infringement and unfair competition under state law.

66.     Therabody has been damaged and will continue to be damaged by Defendants' infringing activities.

67.     Therabody has no adequate remedy at law and is entitled to an injunction prohibiting Defendants from continuing the infringing practices described herein, and a recall order directed to the infringing items in the marketplace.

68.     Therabody is also entitled to profits and damages arising from Defendants' wrongful use of Plaintiff's Trade Dress.

69.     Therabody is informed and believes, on that basis alleges, that Defendants' conduct was willful, wanton, malicious, and in conscious disregard of Therabody's rights, thereby justifying an award of punitive and/or exemplary damages in an amount according to proof at trial.

**FOURTH CAUSE OF ACTION**

**Patent Infringement of the '565 Patent, 35 U.S.C. §§ 101 et seq.**

(Against All Defendants)

70.     Therabody realleges and incorporates by reference all foregoing paragraphs as if fully set forth herein.

71.     At all times herein mentioned the '565 Patent was and is valid and fully enforceable.

72.     Defendants are offering percussive massage devices that infringe at least claim 1 of the '565 Patent, including at least the Infringing Device.

73.     Defendants' Infringing Device is a percussive massage device.

74.     As shown below, Defendants' Infringing Device includes a housing, wherein the housing includes first, second and third handle portions that cooperate to at least partially define a handle opening.



75.     As shown below, Defendants' Infringing Device includes a first handle portion that defines a first axis, a second handle portion that defines a second axis and a third handle portion that defines a third axis, and wherein the first, second and third axes are co-planar.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



76.     As shown above, the Infringing Device includes that the first handle portion is generally straight, that the second handle portion is generally straight, and that the third handle portion is generally straight, such that a user can grasp any of the first, second or third handle portions independently to use the percussive massage device.

77.     The Infringing Device includes an electrical source, a motor positioned in the housing, a switch for activating the motor, and a push rod assembly operatively connected to the motor and configured to reciprocate in response to activation of the motor.

78.     On information and belief, at least since the filing of this Complaint, Defendants have knowingly and actively induced the infringement of one or more of the '565 Patent claims by, *inter alia,* marketing, promoting, and offering for use the Infringing Device, knowingly and intending that the use of the Infringing Device by Defendants' customers and by users infringes the '565 Patent. For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the Infringing Device knowing that its purchase and use infringes one or more claims of the '565 Patent.

79.     On information and belief, at least since the filing of this Complaint, Defendants have contributed to the infringement of the '565 Patent by their customers and users of the Infringing Device by, *inter alia,* making, offering to sell, selling and/or importing into the United States, a component of a patented machine, manufacture or combination, or an apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in infringing the '565 Patent. The Infringing Device is not a staple article or commodity of commerce suitable for substantial non-infringing use and is known by Defendants to be especially made or especially adapted to the infringe the '565 Patent. As a result, Defendants' Infringing Device has been used by its customers and by users to infringe the '565 Patent. Defendants continue to engage in acts of contributory infringement of the '565 Patent even after receiving notice of its contributory infringement.

80.     Defendants infringe literally or under the doctrine of equivalents, or both.   At no time has Therabody granted Defendants authorization, license, or permission to utilize the inventions claimed in the '565 Patent.   Therabody has been damaged by Defendants' acts of infringement of the '565 Patent and Therabody will continue to be damaged by such infringement unless enjoined by this Court. Therabody is entitled to recover damages adequate to compensate for the infringement under 35 U.S.C. § 284.

81.     Therabody is, and has been, irreparably harmed by Defendants' on-going infringement, including the following harm which cannot be quantified or recouped through monetary damages: (1) lost market share that will be difficult, if not impossible, to recoup later as the Infringing Device becomes entrenched with retail sellers and trainers who recommend it to their clients, (2) loss of first mover advantage that Therabody enjoyed as the first company to offer its innovative percussive devices and patented attachments, (3) loss of Therabody's investment in developing the market for percussive devices and its patented attachments, (4) negative effect on its

reputation as innovator and pioneer, (5) the unquantifiable effect on lost sales of related products, (6) price erosion due to Defendants' Infringing Device being sold at a price point lower than Therabody's patented products, (7) diversion of resources to defend against loss of market share caused by sales of the Infringing Device, and (8) Defendants' unauthorized sales that are enticing others to offer for sale and sell infringing attachments that leads to additional irreparable harm described above.

82.    Defendants' acts of infringement, including their continued sales of the Infringing Products after notice of their infringement through the filing of this complaint and Therabody's marking of its products via its website at https://www.therabody.com/us/en-us/patents.html, continue to be willful and deliberate and therefore warrant the award of attorneys' fees pursuant to 35 U.S.C. § 285 and the award of enhanced damages pursuant to 35 U.S.C. § 284.

## FIFTH CAUSE OF ACTION

### Patent Infringement of the '064 Patent, 35 U.S.C. §§ 101 et seq.

(Against All Defendants)

83.    Therabody realleges and incorporates by reference all foregoing paragraphs as if fully set forth herein.

84.    At all times herein mentioned the '064 Patent was and is valid and fully enforceable.

85.    Defendants infringe at least claim 19 of the '064 Patent by practicing the claimed method of obtaining and using a percussive massage device.

86.    As shown below, Defendants' Infringing Device includes a housing that includes first, second and third handle portions that cooperate to at least partially define a handle opening.

1
2
3
4
5
6
7
8
9



87.     As shown below, Defendants' Infringing Device includes the first handle portion defines a first axis, the second handle portion defines a second axis and the third handle portion defines a third axis, wherein the first handle portion includes a first handle portion interior edge and defines a first handle portion length, wherein the first handle portion length is long enough that when a user grasps the first handle portion with a hand at least a portion of three fingers extend through the handle opening and contact the first handle portion interior edge, wherein the second handle portion includes a second handle portion interior edge and defines a second handle portion length, wherein the second handle portion length is long enough that when a user grasps the second handle portion with a hand at least a portion of three fingers extend through the handle opening and contact the second handle portion interior edge, wherein the third handle portion includes a third handle portion interior edge and defines a third handle portion length, wherein the third handle portion length is long enough that when a user grasps the third handle portion with a hand at least a portion of three fingers extend through the handle opening and contact the third handle portion interior edge.



88.    The Infringing Device includes a motor positioned in the housing, a switch for activating the motor, and a push rod assembly operatively connected to the motor and configured to reciprocate in response to activation of the motor.

89.    Defendants further practice the method of using Infringing Device, including activating the motor using the switch, grasping the first handle portion using a first hand, massaging a first body part, reorienting the percussive massage device, grasping the second handle portion using the first hand and massaging the first body part or a second body part, and reorienting the percussive massage device, grasping the third handle portion using the first hand and massaging the first body part, the second body part or a third body part.

90.    The Infringing Device includes the first handle portion, second handle portion and third handle portion are generally straight.

91.    On information and belief, at least since the filing of this Complaint, Defendants have knowingly and actively induced the infringement of one or more of the '064 Patent claims by, *inter alia,* marketing, promoting, and offering for use the Infringing Device, knowingly and intending that the use of the Infringing Device by

Defendants' customers and by users infringes the '064 Patent. For example, Defendants intend to induce such infringement by, among other things, promoting users to use the Infringing Device knowing that its use infringes one or more claims of the '064 Patent.

92. On information and belief, at least since the filing of this Complaint, Defendants have contributed to the infringement of the '064 Patent by their customers and users of the Infringing Device by, *inter alia,* making, offering to sell, selling and/or importing into the United States, a component of a patented machine, manufacture or combination, or an apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in infringing the '064 Patent. The Infringing Device is not a staple article or commodity of commerce suitable for substantial non-infringing use and is known by Defendants to be especially made or especially adapted to the infringe the '064 Patent. As a result, Defendants' Infringing Device has been used by its customers and by users to infringe the '064 Patent. Defendants continue to engage in acts of contributory infringement of the '064 Patent even after receiving notice of its contributory infringement.

93. Defendants infringe literally or under the doctrine of equivalents, or both.

94. At no time has Therabody granted Defendants authorization, license, or permission to utilize the inventions claimed in the '064 Patent.

95. Therabody has been damaged by Defendants' acts of infringement of the '064 Patent and Therabody will continue to be damaged by such infringement unless enjoined by this Court. Therabody is entitled to recover damages adequate to compensate for the infringement under 35 U.S.C. § 284.

96. Therabody is, and has been, irreparably harmed by Defendants' on-going infringement, including the following harm which cannot be quantified or recouped through monetary damages: (1) lost market share that will be difficult, if not

impossible, to recoup later as the Infringing Device becomes entrenched with retail sellers and trainers who recommend it to their clients, (2) loss of first mover advantage that Therabody enjoyed as the first company to offer its innovative percussive devices and patented attachments, (3) loss of Therabody's investment in developing the market for percussive devices and its patented attachments, (4) negative effect on its reputation as innovator and pioneer, (5) the unquantifiable effect on lost sales of related products, (6) price erosion due to Defendants' Infringing Device being sold at a price point lower than Therabody's patented products, (7) diversion of resources to defend against loss of market share caused by sales of the Infringing Device, and (8) Defendants' unauthorized sales that are enticing others to offer for sale and sell infringing attachments that leads to additional irreparable harm described above.

97.     Defendants' acts of infringement, including their continued sales of the Infringing Products after notice of their infringement through the filing of this complaint and Therabody's marking of its products via its website at https://www.therabody.com/us/en-us/patents.html, continue to be, willful and deliberate and therefore warrant the award of attorneys' fees pursuant to 35 U.S.C. § 285 and the award of enhanced damages pursuant to 35 U.S.C. § 284.

### SIXTH CAUSE OF ACTION

**Patent Infringement of the '261 Patent, 35 U.S.C. §§ 101 et seq.**

(Against All Defendants)

98.     Therabody realleges and incorporates by reference all paragraphs above as if fully set forth herein.

99.     At all times herein mentioned the '261 Patent was and is valid and fully enforceable.

100.   As shown below, a side by side comparison of figures from Therabody's '261 Patent and the design of Defendants' First Infringing Attachment as a whole quickly reveals that the First Infringing Attachment appears substantially the same as Therabody's '261 Patent to an ordinary observer, and the resemblance is such as to

deceive such an observer, inducing him to purchase one supposing it to be the other. Among other things, an ordinary observer would conclude that the First Infringing Attachment has a number of the same, or very similar, features as the design patented in the '261 Patent that contribute to an overall appearance that is substantially the same, including that both the patented design and First Infringing Attachment are (a) cone shaped, (b) have the same relative dimensions (cone axial length relative to the diameter of the base), (c) have a rounded tip, and (d) have a generally circular cavity centered in the base of the attachment:



101.   Defendants have and continue to directly infringe the '261 Patent by making, using, offering for sale, selling and importing the First Infringing Attachment in conjunction with percussive massage devices competitive to Therabody.

102.   Defendants' infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

103.   On information and belief, at least since the filing of this Complaint, Defendants have knowingly and actively induced the infringement of one or more of the '261 Patent claims by, inter alia, marketing, promoting, and offering for use the First Infringing Attachment, knowingly and intending that the use of the First Infringing Attachment by Defendants' customers and by users infringes the '261 Patent.  For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the First Infringing Attachment knowing that its purchase and use infringes one or more claims of the '261 Patent.

104.   On information and belief, at least since the filing of this Complaint, Defendants have contributed to the infringement of the '261 Patent by, inter alia, marketing and promoting the First Infringing Attachment to its customers and users. The First Infringing Attachment is not a staple article or commodity of commerce suitable for substantial non-infringing use and is known by Defendants to be especially made or especially adapted to the infringe the '261 Patent.  As a result, Defendants' First Infringing Attachment has been used by their customers and by users to infringe the '261 Patent. Defendants continue to engage in acts of contributory infringement of the '261 Patent even after receiving notice of their contributory infringement.

105.   At no time has Therabody granted Defendants authorization, license, or permission to utilize the design claimed in the '261 Patent.

106.   Therabody has been damaged by Defendants' acts of infringement of the '261 Patent and Therabody will continue to be damaged by such infringement unless enjoined by this Court.   Therabody is entitled to recover damages adequate to compensate for the infringement under 35 U.S.C. § 284.

107.   Therabody is, and has been, irreparably harmed by Defendants' ongoing infringement including the following harm which cannot be quantified or recouped through monetary damages: (1) lost market share that will be difficult, if not impossible, to recoup later as the First Infringing Attachment becomes entrenched with retail sellers and trainers who recommend them to their clients, (2) loss of first mover advantage that Therabody enjoyed as the first company to offer its innovative percussive devices and patented attachments, (3) loss of Therabody's investment in building up the market for percussive devices and its patented attachments, (4) negative effect on its reputation as innovator and pioneer, (5) the unquantifiable effect on lost sales of related products, (6) price erosion due to Defendants' First Infringing Attachment being sold at a price point lower than Therabody's patented product, (7) diversion of resources to defend against loss of market share caused by sales of the

1    First Infringing Attachment, and (8) Defendants' unauthorized sales that are enticing

2    others to offer for sale and sell infringing attachments that leads to additional

3    irreparable harm described above.

4          108.   Defendants' acts of infringement, including continuing the infringing

5    activities after receiving notice of Defendants' direct and indirect infringement, have

6    been, and continue to be, willful and deliberate and therefore warrant the award of

7    attorneys' fees pursuant to 35 U.S.C. § 285 and the award of enhanced damages

8    pursuant to 35 U.S.C. § 284.

9                              **SEVENTH CAUSE OF ACTION**

10          **Patent Infringement of the '182 Patent, 35 U.S.C. §§ 101 et seq.**

11                              (Against All Defendants)

12          109.   Therabody realleges and incorporates by reference all paragraphs above

13   as if fully set forth herein.

14          110.   At all times herein mentioned the '182 Patent was and is valid and fully

15   enforceable.

16          111.   As shown below, a side by side comparison of Therabody's '182 Patent

17   and Defendants' First Infringing Attachment quickly reveals that the design of the

18   First Infringing Attachment as a whole appears substantially the same as Therabody's

19   '182 Patent to an ordinary observer, and the resemblance is such as to deceive such

20   an observer, inducing him to purchase one supposing it to be the other.  Among other

21   things, an ordinary observer would conclude that the First Infringing Attachment has

22   a number of the same, or very similar, features as the design patented in the '182

23   Patent that contribute to an overall appearance that is substantially the same, including

24   but not limited to that both the patented design and First Infringing Attachment are

25   (a) cone shaped, (b) have the same relative dimensions (cone axial length relative to

26   the diameter of the base), (c) have a rounded tip, and (d) have a generally circular

27   cavity centered in the base of the attachment:

28



First Infringing Attachment

112.   Defendants have and continue to directly infringe the '182 Patent by making, using, offering for sale, selling and importing the First Infringing Attachment in conjunction with percussive massage devices competitive to Therabody.

113.   Defendants' infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

114.   On information and belief, at least since the filing of this Complaint, Defendants have knowingly and actively induced the infringement of one or more of the '182 Patent claims by, inter alia, marketing, promoting, and offering for use the First Infringing Attachment, knowingly and intending that the use of the First Infringing Attachment by Defendants' customers and by users infringes the '182 Patent.  For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the First Infringing Attachment knowing that its purchase and use infringes one or more claims of the '182 Patent.

115.   On information and belief, at least since the filing of this Complaint, Defendants have contributed to the infringement of the '182 Patent by, inter alia, marketing and promoting the First Infringing Attachment to their customers and users. The First Infringing Attachment is not a staple article or commodity of commerce suitable for substantial non-infringing use and is known by Defendants to be especially made or especially adapted to the infringe the '182 Patent. As a result, Defendants' First Infringing Attachment has been used by their customers and by users to infringe the '182 Patent.   Defendants continue to engage in acts of

contributory infringement of the '182 Patent even after receiving notice of their contributory infringement.

116.   At no time has Therabody granted Defendants authorization, license, or permission to utilize the design claimed in the '182 Patent.

117.   Therabody has been damaged by Defendants' acts of infringement of the '182 Patent and Therabody will continue to be damaged by such infringement unless enjoined by this Court.   Therabody is entitled to recover damages adequate to compensate for the infringement under 35 U.S.C. § 284.

118.   Therabody is, and has been, irreparably harmed by Defendants' ongoing infringement including the following harm which cannot be quantified or recouped through monetary damages: (1) lost market share that will be difficult, if not impossible, to recoup later as the First Infringing Attachment becomes entrenched with retail sellers and trainers who recommend them to their clients, (2) loss of first mover advantage that Therabody enjoyed as the first company to offer its innovative percussive devices and patented attachments, (3) loss of Therabody's investment in building up the market for percussive devices and its patented attachments, (4) negative effect on its reputation as innovator and pioneer, (5) the unquantifiable effect on lost sales of related products, (6) price erosion due to Defendants' First Infringing Attachment being sold at a price point lower than Therabody's patented product, (7) diversion of resources to defend against loss of market share caused by sales of the First Infringing Attachment, and (8) Defendants' unauthorized sales that are enticing others to offer for sale and sell infringing attachments that leads to additional irreparable harm described above.

119.   Defendants' acts of infringement, including continuing the infringing activities after receiving notice of Defendants' direct and indirect infringement, have been, and continue to be, willful and deliberate and therefore warrant the award of attorneys' fees pursuant to 35 U.S.C. § 285 and the award of enhanced damages pursuant to 35 U.S.C. § 284.

## **EIGHTH CAUSE OF ACTION**

### **Patent Infringement of the '640 Patent**

### **(35 U.S.C. §§ 101 et seq.)**

120.   Therabody realleges and incorporates by reference all paragraphs above as if fully set forth herein.

121.   At all times herein mentioned the '640 Patent was and is valid and fully enforceable.

122.   As shown below, a side by side comparison of Therabody's '640 Patent and Defendants' Second and Third Infringing Attachments quickly reveals that designs of the Second and Third Infringing Attachments as a whole appear substantially the same as Therabody's '640 Patent to an ordinary observer, and the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other.   Among other things, an ordinary observer would conclude that the Second and Third Infringing Attachments have a number of the same, or very similar, features as the design patented in the '640 Patent that contribute to an overall appearance that is substantially the same, including but not limited to that both the patented design and Second and Third Infringing Attachments are (a) spherically shaped, (b) have a base with a circular design surrounding a center cavity, and (c) have a generally circular cavity centered in the base of the attachment:



FIG. 8                              Second and Third Infringing Attachments

123.   Defendants have and continue to directly infringe the '640 Patent by making, using, offering for sale, selling and importing the Second and Third

Infringing Attachments in conjunction with percussive massage devices competitive to Therabody.

124. Defendants' infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

125. On information and belief, at least since the filing of this Complaint, Defendants have knowingly and actively induced the infringement of one or more of the '640 Patent claims by, *inter alia,* marketing, promoting, and offering for use the Second and Third Infringing Attachments, knowingly and intending that the use of the Second and Third Infringing Attachments by Defendants' customers and by users infringes the '640 Patent.  For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the Second and Third Infringing Attachments knowing that such purchase and use infringes one or more claims of the '640 Patent.

126. On information and belief, at least since the filing of this Complaint, Defendants have contributed to the infringement of the '640 Patent by, *inter alia,* marketing and promoting the Second and Third Infringing Attachments to its customers and users.  The Second and Third Infringing Attachments are not staple articles or commodities of commerce suitable for substantial non-infringing use and are known by Defendants to be especially made or especially adapted to the infringe the '640 Patent. As a result, Defendants' Second and Third Infringing Attachments have been used by their customers and by users to infringe the '640 Patent. Defendants continue to engage in acts of contributory infringement of the '640 Patent even after receiving notice of their contributory infringement.

127. At no time has Therabody granted Defendants authorization, license, or permission to utilize the design claimed in the '640 Patent.

128. Therabody has been damaged by Defendants' acts of infringement of the '640 Patent and Therabody will continue to be damaged by such infringement unless

enjoined by this Court.  Therabody is entitled to recover damages adequate to compensate for the infringement under 35 U.S.C. § 284.

129.   Therabody is, and has been, irreparably harmed by Defendants' ongoing infringement, including the following harm which cannot be quantified or recouped through monetary damages: (1) lost market share that will be difficult, if not impossible, to recoup later as the Second Infringing Attachment and Third Infringing Attachment become entrenched with retail sellers and trainers who recommend them to their clients, (2) loss of first mover advantage that Therabody enjoyed as the first company to offer its innovative percussive devices and patented attachments, (3) loss of Therabody's investment in building up the market for percussive devices and its patented attachments, (4) negative effect on its reputation as innovator and pioneer, (5) the unquantifiable effect on lost sales of related products, (6) price erosion due to Defendants' Second Infringing Attachment and Third Infringing Attachment being sold at a price point lower than Therabody's patented product, (7) diversion of resources to defend against loss of market share caused by sales of the Second Infringing Attachment and Third Infringing Attachment, and (8) Defendants' unauthorized sales that are enticing others to offer for sale and sell infringing attachments that lead to additional irreparable harm described above.

130.   Defendants' acts of infringement, including continuing the infringing activities after receiving notice of Defendants' direct and indirect infringement, have been, and continue to be, willful and deliberate and therefore warrant the award of attorneys' fees pursuant to 35 U.S.C. § 285 and the award of enhanced damages pursuant to 35 U.S.C. § 284.

## NINTH CAUSE OF ACTION

### Patent Infringement of the '680 Patent

### (35 U.S.C. §§ 101 et seq.)

131.   Therabody realleges and incorporates by reference all paragraphs above as if fully set forth herein.

132.   At all times herein mentioned the '680 Patent was and is valid and fully enforceable.

133.   As shown below, a side by side comparison of Therabody's '680 Patent and Defendants' Second Infringing Attachment and Third Infringing Attachment quickly reveals that the designs of the Second and Third Infringing Attachments as a whole appear substantially the same as Therabody's '680 Patent to an ordinary observer, and the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other.   Among other things, an ordinary observer would conclude that the Second and Third Infringing Attachments have a number of the same, or very similar, features as the design patented in the '640 Patent that contribute to an overall appearance that is substantially the same, including but not limited to that both the patented design and Second and Third Infringing Attachments are (a) spherically shaped, (b) have a base with a circular design surrounding a center cavity, and (c) have a generally circular cavity centered in the base of the attachment:



Second and Third Infringing Attachments

134.   Defendants have and continue to directly infringe the '680 Patent by making, using, offering for sale, selling and importing the Second and Third Infringing Attachments in conjunction with percussive massage devices competitive to Therabody.

135.   Defendants' infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

136.   On information and belief, at least since the filing of this Complaint, Defendants have knowingly and actively induced the infringement of one or more of

JMBM Jeffer Mangels Butler & Mitchell LLP

the '680 Patent claims by, *inter alia,* marketing, promoting, and offering for use the Second and Third Infringing Attachments, knowingly and intending that the use of the Second and Third Infringing Attachments by Defendants' customers and by users infringes the '680 Patent. For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the Second and Third Infringing Attachments knowing that such purchase and use infringes one or more claims of the '680 Patent.

137. On information and belief, at least since the filing of this Complaint, Defendants have contributed to the infringement of the '680 Patent by, *inter alia,* marketing and promoting the Second and Third Infringing Attachments to their customers and users. The Second and Third Infringing Attachments are not staple articles or commodities of commerce suitable for substantial non-infringing use and are known by Defendants to be especially made or especially adapted to the infringe the '680 Patent. As a result, Defendants' Second and Third Infringing Attachments have been used by its customers and by users to infringe the '680 Patent. Defendants continue to engage in acts of contributory infringement of the '680 Patent even after receiving notice of their contributory infringement.

138. At no time has Therabody granted Defendants authorization, license, or permission to utilize the design claimed in the '680 Patent.

139. Therabody has been damaged by Defendants' acts of infringement of the '680 Patent and Therabody will continue to be damaged by such infringement unless enjoined by this Court. Therabody is entitled to recover damages adequate to compensate for the infringement under 35 U.S.C. § 284.

140. Therabody is, and has been, irreparably harmed by Defendants' ongoing infringement including the following harm which cannot be quantified or recouped through monetary damages: (1) lost market share that will be difficult, if not impossible, to recoup later as the Second and Third Infringing Attachments become entrenched with retail sellers and trainers who recommend them to their clients, (2)

loss of first mover advantage that Therabody enjoyed as the first company to offer its innovative percussive devices and patented attachments, (3) loss of Therabody's investment in building up the market for percussive devices and its patented attachments, (4) negative effect on its reputation as innovator and pioneer, (5) the unquantifiable effect on lost sales of related products, (6) price erosion due to Defendants' Second and Third Infringing Attachments being sold at a price point lower than Therabody's patented product, (7) diversion of resources to defend against loss of market share caused by sales of the Second and Third Infringing Attachments, and (8) Defendants' unauthorized sales that are enticing others to offer for sale and sell infringing attachments that leads to additional irreparable harm described above.

141.  Defendants' acts of infringement, including continuing the infringing activities after receiving notice of Defendants' direct and indirect infringement, have been, and continue to be, willful and deliberate and therefore warrant the award of attorneys' fees pursuant to 35 U.S.C. § 285 and the award of enhanced damages pursuant to 35 U.S.C. § 284.

## TENTH CAUSE OF ACTION

### Patent Infringement of the '500 Patent

### (35 U.S.C. §§ 101 et seq.)

142.  Therabody realleges and incorporates by reference all paragraphs above as if fully set forth herein.

143.  At all times herein mentioned the '500 Patent was and is valid and fully enforceable.

144.  As shown below, a side by side comparison of Therabody's '500 Patent and Defendants' Fourth Infringing Attachment quickly reveals that the designs of the Fourth Infringing Attachment as a whole appear substantially the same as Therabody's '500 Patent to an ordinary observer, and the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other. Among other things, an ordinary observer would conclude that the Fourth Infringing

Attachment have a number of the same, or very similar, features as the design patented in the '500 Patent that contribute to an overall appearance that is substantially the same, including but not limited to that both the patented design and Fourth Infringing Attachment is (a) width of contact side (where it placed against a body part) is larger than the width of the attachment side, (b) width of the contact side and the length (top to bottom) are generally the same size, (c) thickness of the contact surface has the same proportions to the length and width of the attachment, (d) rounded contact surface, and (e) a generally circular cavity centered in the base of the attachment:



FIG 2



Fourth Infringing Attachment

145.   Defendants have and continue to directly infringe the '500 Patent by making, using, offering for sale, selling and importing Fourth Infringing Attachment in conjunction with percussive massage devices competitive to Therabody.

146.   Defendants' infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

147.   On information and belief, at least since the filing of this Complaint, Defendants have knowingly and actively induced the infringement of one or more of the '500 Patent claims by, *inter alia,* marketing, promoting, and offering for use the Fourth Infringing Attachment knowingly and intending that the use of the Fourth Infringing Attachment by Defendants' customers and by users infringes the '500 Patent.  For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the Fourth Infringing Attachment knowing that such purchase and use infringes one or more claims of the '500 Patent.

148.   On information and belief, at least since the filing of this Complaint, Defendants have contributed to the infringement of the '500 Patent by, *inter alia,*

marketing and promoting the Fourth Infringing Attachment to their customers and users.  The Fourth Infringing Attachment is not staple articles or commodities of commerce suitable for substantial non-infringing use and are known by Defendants to be especially made or especially adapted to the infringe the '500 Patent.  As a result, Defendants' Fourth Infringing Attachment has been used by its customers and by users to infringe the '500 Patent.  Defendants continue to engage in acts of contributory infringement of the '500 Patent even after receiving notice of their contributory infringement.

149.   At no time has Therabody granted Defendants authorization, license, or permission to utilize the design claimed in the '500 Patent.

150.   Therabody has been damaged by Defendants' acts of infringement of the '500 Patent and Therabody will continue to be damaged by such infringement unless enjoined by this Court.   Therabody is entitled to recover damages adequate to compensate for the infringement under 35 U.S.C. § 284.

151.   Therabody is, and has been, irreparably harmed by Defendants' ongoing infringement including the following harm which cannot be quantified or recouped through monetary damages: (1) lost market share that will be difficult, if not impossible, to recoup later as the Fourth Infringing Attachment becomes entrenched with retail sellers and trainers who recommend them to their clients, (2) loss of first mover advantage that Therabody enjoyed as the first company to offer its innovative percussive devices and patented attachments, (3) loss of Therabody's investment in building up the market for percussive devices and its patented attachments, (4) negative effect on its reputation as innovator and pioneer, (5) the unquantifiable effect on lost sales of related products, (6) price erosion due to Defendants' Fourth Infringing Attachment being sold at a price point lower than Therabody's patented product, (7) diversion of resources to defend against loss of market share caused by sales of the Fourth Infringing Attachment, and (8) Defendants' unauthorized sales that

are enticing others to offer for sale and sell infringing attachments that leads to additional irreparable harm described above.

152.   Defendants' acts of infringement, including continuing the infringing activities after receiving notice of Defendants' direct and indirect infringement, have been, and continue to be, willful and deliberate and therefore warrant the award of attorneys' fees pursuant to 35 U.S.C. § 285 and the award of enhanced damages pursuant to 35 U.S.C. § 284.

## ELEVENTH CAUSE OF ACTION

### State Unfair Business Practices

### (Cal. Bus. & Prof. Code § 17200)

153.   Therabody realleges and incorporates by reference all paragraphs above as if fully set forth herein.

154.   Defendants' acts of trade dress and patent infringement alleged herein constitute unlawful, unfair and fraudulent business practices and misleading advertising pursuant to Cal. Bus. & Prof. Code § 17200.

155.   Therabody has been damaged and will continue to be damaged by Defendants' unlawful, unfair and fraudulent business practices and misleading advertising, as described above.

156.   Pursuant to Cal. Bus. & Prof. Code § 17200, Plaintiff is entitled to an injunction prohibiting Defendants from continuing the practices described above, and restitution of all amounts acquired by Defendants by means of such wrongful acts.

## PRAYER FOR RELIEF

WHEREFORE, Therabody prays for judgment as follows:

A.   For an order that, by the acts complained of herein, Defendants have infringed Therabody's trade dress rights, in violation of 15 U.S.C. § 1125;

B.   For an order finding that Therabody's Trade Dress is valid and protectable and that, by the acts complained of herein, Defendants have infringed Therabody's rights in the Trade Dress;

C.     For an order temporarily, preliminarily and permanently enjoining Defendants, and all of their officers, directors, agents, servants, affiliates, employees, subsidiaries, divisions, branches, parents, attorneys, representatives, privies, and all others acting in concert or participation with any of them, from using from using the Infringing Trade Dress, and any marks or trade dress confusingly similar to any of Therabody's Trade Dress, or engaging in further acts of unfair competition or trademark or trade dress infringement;

D.     For an order finding that the Asserted Patents, and each of them, are valid and enforceable;

E.     For an order finding that Defendants have infringed the Asserted Patents directly, contributorily, and/or by inducement, literally or by equivalents, in violation of 35 U.S.C. § 271;

F.     For an order temporarily, preliminarily and permanently enjoining Defendants, their officers, directors, agents, servants, affiliates, employees, subsidiaries, divisions, branches, parents, attorneys, representatives, privies, and all others acting in concert or participation with any of them, from infringing the Asserted Patents directly, contributorily and/or by inducement, or otherwise engaging in acts of unfair competition;

G.     For a judgment directing that any products in the possession, custody or control of Defendants which infringe any of the Asserted Patents, any of the Therabody Trade Dress be delivered up and destroyed within 30 days of entry of judgment;

H.     For a judgment directing Defendants to recall all such infringing products and any other materials sold, distributed, advertised or marketed which infringe any of the Asserted Patents, any of the Therabody Trade Dress;

I.     For an order directing Defendants to file with the Court, and serve upon Therabody's counsel, within thirty (30) days after entry of the order of injunction, a

report setting forth the manner and form in which each of them has complied with the injunction;

J.   For an order that, by the acts complained of herein, Defendants have infringed Therabody's common law trademark and trade dress rights and/or engaged in acts of common law unfair competition against Therabody;

K.   For an order finding that Defendants' conduct alleged herein was willful and intentional and in conscious disregard of Therabody's rights;

L.   For compensatory damages in an amount to be proven at trial, including disgorgement of profits or gains of any kind made by Defendants from their infringing acts, lost profits and/or reasonable royalty, in amounts to be fixed by the Court in accordance with proof, including general, statutory, enhanced, exemplary, treble, and/or punitive damages, as appropriate;

M.   For treble damages pursuant to 15 U.S.C. § 1117;

N.   For an accounting and restitution and disgorgement of all payments, profits, and revenues Defendants obtained as a result of their wrongful conduct, in an amount to be proven at trial, including pursuant to 15 U.S.C. § 1117;

O.   For an order finding that this is an exceptional case, and awarding Plaintiff's reasonable attorney's fees according to proof;

P.   For an order awarding Therabody its costs of court; and

Q.   For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues so triable.

1  DATED:  December 1, 2021

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JEFFER MANGELS BUTLER &
MITCHELL LLP
ROD S. BERMAN
GREGORY S. CORDREY


By:  _____*/s/ Gregory S. Cordrey*_____
        GREGORY S. CORDREY
   Attorneys for Plaintiff Therabody, Inc.